In re Yvonne BENSON, Debtor.

RTO RENTS, Movant,

v.

Yvonne BENSON, Respondent.

Bankruptcy No. 3–89–01960.

United States Bankruptcy Court,
S.D. Ohio, W.D.

July 2, 1990.

Christopher M. Hawk, Dayton, Ohio, for debtor.

Stephen D. Miles, Dayton, Ohio, for RTO Rents.

George W. Ledford, Chapter 13 Trustee, Englewood, Ohio.

U.S. Trustee, Columbus, Ohio.

## DECISION AND ORDER GRANTING MOVANT'S MOTION TO MODIFY AUTOMATIC STAY

WILLIAM A. CLARK, Bankruptcy Judge.

Before the court is a motion of RTO Rents requesting relief from the automatic stay of 11 U.S.C. § 362. The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

### FACTS

On May 30, 1989 Yvonne Benson, respondent/debtor, filed a petition in bankruptcy under chapter 13 of the Bankruptcy Code. Her chapter 13 plan, which proposed to pay $80 per month for 36 months and to pay unsecured creditors a 17% dividend, was confirmed on July 19, 1989. On December 5, 1989, the debtor entered into three separate agreements with the movant, RTO Rents, to lease the following items:

| | |
|---|---|
| Microwave, Couch, and Love Seat | $400.00 |
| Washer and Dryer | $400.00 |
| Television | $400.00 |

The parties have stipulated that, prior to entering into the lease agreements, the debtor informed RTO Rents that she was currently a chapter 13 debtor. Thirteen days later the debtor filed an "Amendment to Chapter 13 Claims," which included RTO Rents (for the amounts stated above), DP & L ($463.00 postpetition), Ohio Bell ($157.57 postpetition), Good Samaritan Hospital ($538.50 postpetition), and the City of Dayton ($167.50 postpetition).

On February 6, 1990 the movant filed a "Motion for Relief from Stay" and requested that the automatic stay of § 362 be terminated on the grounds that the debtor had not made payments in accordance with the terms of the rental agreements and that the debtor had no equity in the collateral. Subsequently, the debtor filed a "Motion to Modify Plan After Confirmation" in which she proposed to pay $105 per month for 48 months and to pay unsecured creditors 100% of their claims. RTO Rents has not filed a proof of claim and does not wish to participate in the debtor's chapter 13 plan.

## CONCLUSIONS OF LAW

■ The major issue before the court is whether the debtor may make an unwilling postpetition claimant part of her chapter 13 plan.

The filing of a petition in bankruptcy marks a critical juncture in the financial affairs of a debtor, and many of the legal consequences of the Bankruptcy Code are determined by reference to the time of filing a petition. The commencement of the case creates an estate under § 541 of the Bankruptcy Code,[1] and, as a general rule, a bankruptcy court is concerned with the administration of that estate only with respect to claims that arose prior to the filing of the bankruptcy petition. One exception to this general rule is contained in § 1305(a), which governs the filing and allowance of postpetition claims in a chapter 13 proceeding:[2]

(a) A proof of claim *may* be filed by any entity that holds a claim against the debtor—

(1) for taxes that become payable to a governmental unit while the case is pending; or

(2) that is a consumer debt, that arises after the date of the order for relief under this chapter, and that is for property or services necessary for the debtor's performance under the plan [Emphasis Supplied].

On its face the statute does not permit a debtor to file a proof of claim for an entity holding a postpetition claim because a debtor is by definition excluded from being an "entity that holds a claim against the debtor." Nor does the statute's use of the word *may* support an inference that an entity must file a proof of claim for a postpetition claim; the provision is obviously permissive.

Although § 501 ["Filing of Proofs of Claims or Interests"] is generally applicable to chapter 13 proceedings by virtue of § 103(a), and § 501(c) permits a debtor to file a proof of claim "[i]f a *creditor* does not timely file a proof of such creditor's claim," § 501(c) is not applicable in the instant matter because of the Bankruptcy Code's definition of a "creditor." *In re Nowak*, 17 B.R. 860, 861 (Bankr.N.D.Ohio 1982). Section 101(9) of the Bankruptcy Code states that "creditor" means—

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or

(C) entity that has a community claim.

---

**1.** The estate in a chapter 13 case is broader than the estate created by § 541. In addition to the property provided for in § 541, property of a chapter 13 estate includes property that the debtor *acquires after the commencement of the case* but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12, as well as the future earnings from services of the debtor. 11 U.S.C. § 1306. Because § 362(a)(3) stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," it appears that RTO Rents was required

to file its motion for relief from the automatic stay. At least one court in this district, however, is not convinced that the automatic stay applies to prohibit a postpetition claimant from pursuing its nonbankruptcy remedies. *See In re Glover*, 107 B.R. 579 (Bankr.S.D.Ohio 1989).

**2.** Another exception to the general rule is found in chapter 11 proceedings where confirmation of a plan discharges a debtor from any debt that *arose before the date of such confirmation.* 11 U.S.C. § 1141(d)(1)(A).

Because RTO Rents is not an entity falling within any of these enumerated categories, it is not a "creditor" for purposes of § 501(c), and, therefore, that section is not applicable to the filing of a proof of claim for a postpetition claim.[3] In summation, "[o]nly the holder of a § 1305 claim may file proof of the claim; a debtor may not file proof of a § 1305 claim on behalf of the holder of such a claim." *In re Pritchett*, 55 B.R. 557, 559 (Bankr.W.D.Va.1985). *Accord, In re Glover*, 107 B.R. 579, 581 (Bankr.S.D.Ohio 1989); *In re Roseboro*, 77 B.R. 38, 39 (Bankr.W.D.N.C.1987); *In re Hefner*, 32 B.R. 382, 383 (Bankr.W.D.N.Y. 1983); *Federal National Mortgage Assoc. v. Moore (In re Shahid )*, 27 B.R. 673, 674 (Bankr.S.D.Ohio 1982); *In re Nowak, supra*, 17 B.R. at 861 (N.D.Ohio 1982).

In addition, the debtor may not sidestep the requirements of § 1305 through the mechanism of modifying her chapter 13 plan after confirmation.[4] *In re Glover, supra*, 107 B.R. at 581. Section 1329, which governs the modification of chapter 13 plans after their confirmation, provides that § 1322 ("Contents of Plan") applies to any postconfirmation modification. With respect to postpetition claims, § 1332(b)(6) provides that a plan may "provide for the payment of all or any part of any claim *allowed* under section 1305." (Emphasis Supplied)

> Section 1322(b)(6) speaks to *allowed* claims while the other provisions of Section 1322(b) speak only to claims. Section 502(a) provides that *allowance* of a claim requires the filing of a proof of claim. Therefore, a Chapter 13 plan may provide for post-petition claims under

Section 1305(a)(2) only if a proof of claim is filed by the holder of the claim. *In re Roseboro, supra*, 77 B.R. at 40.

The result reached in this case is also consistent with the legislative history of the Bankruptcy Code as well as the underlying philosophy of chapter 13. In a chapter 13 proceeding, a major objective of the bankruptcy law is to enable a debtor, who is unable to meet his financial obligations, to restructure his financial affairs by adjusting his debts either by way of composition or extension so that he may be relieved of intolerable financial pressure. Following the confirmation process, the debtor essentially emerges with the contracts between himself and his creditors having been rewritten as evidenced by his proposed plan and the confirmation order. However, the court-approved compact between the debtor and his prepetition creditors does not shield him from his postpetition dealings in the world. In this regard a chapter 13 debtor should be subject to the same financial consequences of his everyday actions as a nondebtor.[5] It would be inequitable to permit a debtor to use his chapter 13 plan as a dragnet to sweep ensnared postpetition claimants into his plan and then to either extend their payment schedules or pay them a fraction of the original claim. Not only would the postpetition claimants be harmed, but the claimants provided for in the initial confirmation order might also be prejudiced.

Congress has recognized a danger to a chapter 13 plan's performance and the existing creditors if debtors are permitted to incur unnecessary debt after the filing of a

---

**3.** Had RTO Rents filed a proof of claim, then it would be deemed to have a prepetition claim, 11 U.S.C. § 1305(b), and would fall within the Bankruptcy Code's definition of a "creditor."

**4.** Nor does the mere amendment of the debtor's schedules assist her to avoid the operation of § 1305. "Although amendments to schedules are allowed as a matter of course, *see* Bankruptcy Rule 1009, newly added debts are not discharged as a matter of right." *In re Pritchett, supra*, 55 B.R. at 558.

**5.** In fact a chapter 13 debtor will be treated differently with respect to postpetition credit transactions in terms of when unpaid postpeti-

tion creditors are able to assert their claims against the debtor's assets. Because the original property of the estate remains within the exclusive jurisdiction of the bankruptcy court by virtue of this court's confirmation order, and postpetition property and future earnings also become property of the estate, a chapter 13 debtor is furnished with a shield that nondebtors do not possess. A postpetition creditor who does not participate in the chapter 13 plan must either be successful in a motion to lift the stay in order to attempt to satisfy a claim against these estate assets or wait until the completion of the plan.

chapter 13 petition. As a result, § 1305(c) provides that a holder of a § 1305(a)(2) claim will have its claim disallowed if the holder knew or should have known that prior approval by the chapter 13 trustee of the debtor's incurring the obligation was practicable and was not obtained.[6] The court is also mindful of this danger, and the debtor in the instant matter was ordered, as part of the chapter 13 confirmation order, not to "incur additional, non-emergency, consumer debt in excess of $250.00 without prior written approval of the Court or the Trustee" (Doc. No. 5).

Congress has also recognized that a debtor may encounter unforeseen circumstances which, unless the debtor is able to obtain postpetition credit, threaten the performance of the chapter 13 plan. As a result, § 1305 sanctions the extension of *consumer* credit to a chapter 13 debtor where the property or services are necessary for the debtor's performance under the plan and the trustee's prior approval was obtained, if practicable. The thrust of § 1305 is to provide a potential creditor, who might not otherwise extend credit, the *opportunity* to share in the distributions of a chapter 13 plan. Section 1305(a)(2) was enacted to permit the filing of a proof of claim against the debtor for a claim,

> that arises after the date of the filing of the petition for property or services that are necessary for the debtor's performance under the plan, such as auto repairs in order that the debtor will be able to get to work, or medical bills. The effect of the latter provision, in paragraph (2), is to treat postpetition credit extended to a chapter 13 debtor the same as a prepetition claim for purposes of allowance, distribution, and so on. H.R. No. 595, 95th Cong., 1st Sess. 427–428 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6383.

However, as discussed above, the postpetition creditor does not have to accept the opportunity to participate in plan distributions. If the potential creditor does not elect to participate in the plan, he may face up to a five year delay in enforcing any claim against the debtor's assets because the debtor's future earnings and property acquired postpetition by the debtor are part of his chapter 13 estate. Nevertheless, the court perceives no statutory basis nor congressional intent to force a postpetition claimant, whether he knows of the debtor's chapter 13 proceeding or not, into the chapter 13 plan.

Nor do the equities in this case favor the debtor. The debtor ignored the court's order not to incur additional debt without the approval of the court or the chapter 13 trustee and leased, in a single day, a microwave, couch, love seat, washer, dryer, and television. The debtor asserts that she needs these items. Although testimony from the debtor would be necessary for the court to evaluate the need for the washer and dryer, the court may categorically state that it does not consider a microwave, couch, love seat, and television to be fundamental necessities of life.

■ RTO Rents is entitled to relief from the automatic stay—

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
>> (A) the debtor does not have an equity in such property; and
>>
>> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

No discussion of § 362(d)(2) is necessary to this decision, because "cause" exists under § 362(d)(1) to modify the automatic stay. As previously noted by this court, under a lease agreement "the debtor may retain possession of the goods only if [she] complies with the provisions of Section 365, which requires curing default, assuring future payments and compensating for pecu-

---

**6.** Because of § 1328(d), "even if a post-petition claimholder under Section 1305(a)(2) files a proof of claim and is provided for by the plan, the claim is not discharged if the debtor's ob-taining prior approval for incurring the debt was practicable and was not done." *In re Roseboro, supra,* 77 B.R. at 41.

niary loss to the lessor." *In re Mitchell*, 108 B.R. 166, 168 (Bankr.S.D.Ohio 1989). At the hearing on this matter, the debtor maintained that she had amended her chapter 13 schedules in order to permit her to accept the lease with RTO Rents and to provide it with adequate protection through her chapter 13 plan. Under the debtor's theory, a debtor may sign a lease postpetition and then assert only days later that she has the option of either rejecting or accepting the lease under § 365. The court notes that the debtor has provided no legal authority for her proposition that § 365 is applicable to leases entered into postpetition.

In any event, acceptance of a lease requires court approval, 11 U.S.C. § 365(a), and given the circumstances surrounding the debtor's transactions with RTO Rents and the nature of the items leased by the debtor, the court does not approve the acceptance of these leases. Therefore, the leases cannot be provided for under any modified plan proposed by the debtor and RTO Rents' interest in the leased property is completely unprotected.

For the foregoing reasons, the motion of RTO Rents is granted and it is hereby ORDERED that the automatic stay of § 362 is modified to permit RTO Rents to take possession of the items it leased to the debtor.